Filed 5/23/24  Shick v. Forooghieh CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| PARIS SHICK,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALI FOROOGHIEH,<br><br>    Defendant and Appellant. | B323432<br><br>Los Angeles County<br>Super. Ct. No.22VERO01001 |

APPEAL from an order of the Superior Court of Los Angeles County, Laura Streimer, Commissioner.  Affirmed.

Ali Forooghieh, in pro.per., for Defendant and Appellant.

Paris Shick, in pro. per., for Plaintiff and Respondent.

_____

In a long-running dispute between neighbors that resulted in dueling petitions for civil harassment restraining orders (Code Civ. Proc.,[1] § 527.6), Ali Forooghieh appeals the issuance of a restraining order against him.

## FACTUAL AND PROCEDURAL BACKGROUND

Forooghieh and Paris Shick, next door neighbors whose houses are separated by driveways, have been feuding for several years. On May 10, 2022, Forooghieh filed a request for a civil harassment restraining order; Shick followed with his own request on May 31, 2022. Both men obtained temporary restraining orders. The two restraining order petitions were heard together.

I.     Forooghieh's Direct Testimony

Forooghieh presented evidence the court ultimately found sufficient to support the issuance of a restraining order against Shick, including that at one point Shick threatened to put Forooghieh "in the hospital."[2]

On direct examination, Forooghieh described what he believed was Shick's harassment of him via placement of Shick's trash cans in the street. Forooghieh told the court that on April 28, 2022, prior to trash pickup, Shick's blue trash can "was inching close to [Forooghieh's] driveway." He testified, "I find all

---

[1]     All undesignated statutory references are to the Code of Civil Procedure.

[2]     Shick did not appeal, and in his respondent's brief, he acknowledges the restraining order against him was properly granted.

2

their trash cans adjacent to my property, and one of them was almost blocking my driveway." Forooghieh testified the Shicks brought their trash cans "right to where the slope is where you want to back out of your driveway." At first he claimed he had to move the trash cans to leave his driveway; when the court commented on the driveway's apparent width, Forooghieh admitted he could back straight out but claimed the cans sometimes obstructed his vision.

According to Forooghieh, Shick was sitting in his car on April 28, 2022. Forooghieh testified he dragged Shick's trash can across the street so it was opposite Shick's house. Shick rolled down his window and profanely insulted Forooghieh, then exited the car and approached Forooghieh while cursing and delivering a colloquial insult meaning he would beat Forooghieh up. Shick began filming Forooghieh, who moved another one of Shick's trash cans across the street. Shick's adult son moved the trash cans back from across the street to a location adjacent to Forooghieh's driveway.

II.    Shick's Direct Testimony

Shick testified that in December 2021 Forooghieh wrote him a threatening email about his trash cans. After Shick responded that his trash cans were on a public street, Forooghieh sent an email threatening to sue. Shick told Forooghieh not to contact him and to stay away from him because Shick had children at home and his wife was ill.

Shick testified that in April 2022, his gardeners reported Forooghieh threatened that if they put Shick's trash cans on or next to his driveway, he would kill them. Shick said he instructed the gardeners to stay away from Forooghieh's property. Shick submitted a letter from a landscaping company

3

describing Forooghieh's threats to kill the gardeners over trash can placement.[3]

According to Shick, on the morning of April 28, 2022, he was sitting in his car when Forooghieh, screaming, approached. Shick testified Forooghieh blocked his way by placing Shick's green trash can in front of his car, and said, "If you put your trash can by my driveway, I shoot you and I kill you." Forooghieh, cursing, grabbed Shick's blue trash can and broke the lid. At this point, Shick testified, he began to record Forooghieh; in the video Forooghieh could be seen moving one of Shick's trash cans. Shick called the police and made a report.

Shick testified that on May 12, 2022, his wife sent him a text message stating Forooghieh was standing on a ladder next to his house and watching her while she was outside by the pool. Shick's wife photographed Forooghieh on the ladder; this photograph was received into evidence.[4]

Shick testified that on Tuesday nights Forooghieh parked his car on the street in front of Shick's house, so that Shick's

---

[3] Forooghieh objected to the introduction of the document, and the court received it over his objection. However, the court later stated it would not give "much weight at all" to the landscaping company letter because it was not signed and there was no heading on the letter. The court said, "Quite frankly, this letter just lacks credibility from the court's perspective."

[4] Forooghieh told the court he was installing an electric conduit when the photograph was taken. After Shick testified his wife did not know how long Forooghieh had been watching her, the court said it did not need her to testify and declined to make findings with respect to the photograph or the claim that Forooghieh was watching Shick's wife.

gardeners, who worked on Wednesday mornings, had nowhere to put his trash cans for Thursday collection. Shick testified the gardeners had to put his trash cans in front of the home of his other next-door neighbors.

### III.  Cross-Examination of Shick

While cross-examining Shick, Forooghieh made factual representations to the court and answered questions posed by the court about his conduct. Forooghieh read from the December 2021 email he had sent to Shick: "Paris, please stop placing your trash cans by my driveway. I shouldn't have to move your trash cans to drive in and out of my property. There is no reason to continue creating nuisance for your neighbors."

Forooghieh then read from Shick's response: "Do not contact me. Do not text me. Do not talk to me or any of my family members. This is harassment. Stop harassing me and my kids."

The court asked Forooghieh how the placement of the trash cans, which could be seen in a photograph presented to the court, interfered with his ability to use his driveway. Forooghieh responded that the image showed "the best-case scenario" of where Shick placed his trash cans. Forooghieh said that a week after the April 2022 incident, the cans were placed as shown in the photo, but then "the trash cans start moving mysteriously towards the edge of the driveway, then one of them falls, then the lid falls, then the trash truck comes and drops one. So from Wednesday to probably Saturday or Sunday, I have to be aware of what they're doing with their trash cans. They're forcing that edge of their property to be their trash—they designated that edge of the property as their trash can. They can easily put the

blue car in the front and put the trash next to their driveway, but they won't."

Forooghieh attempted to present evidence that Shick had built a pathway on the property of the neighbor on the other side of Shick's house, and he kept that pathway unobstructed, but the court stopped the questioning as irrelevant and advised Forooghieh, "We're not going to have a back-and-forth about who gets to use which piece of the public street. That's not harassment. If your neighbor parks in front of your house on the public street . . . that's not harassment." Forooghieh argued that Shick was encroaching on another neighbor's property, and the court responded, "What's before this court is how the two of you have interacted with one another. I don't really care if he's building the Taj Mahal on his neighbor's front yard. That's not your business. And if he's choosing not to park in front of the Taj Mahal because he doesn't want to, and he chooses to park in front of your house, that's also none of your business."

Forooghieh questioned Shick about Shick's claim that Forooghieh broke the lid of Shick's trash can, and the men disagreed as to whether the video showed the lid broken or intact. The court acknowledged the factual dispute and indicated the trash can may already have been broken when Forooghieh moved it. The court asked Forooghieh whether the trash can he was seen pushing in the video was Shick's. Forooghieh responded that it was the city's property, and the court observed trash cans may be city property but are assigned and leased to property owners.

Forooghieh questioned Shick about the placement of his cars in a photograph, telling the court Shick and his wife parked "[a]djacent to [Forooghieh's] property." The court estimated the

6

distance between the Shicks' car and Forooghieh's driveway in the photograph was three to four feet, while Forooghieh said it was "[m]aybe two" feet. The court asked Forooghieh what he meant by "adjacent," and Forooghieh answered, "Right at the edge of my property. They maintain control over that piece of property. That's what I am getting at. They move the blue car back and forth so that nobody can park in front of it and nobody can park behind it."

Forooghieh told the court Shick's gardener would place trash cans by Shick's driveway, but then Shick "reserves the two spots, and then two hours later removes his car and moves the trash cans back to where his car used to be. So by force, they maintain that place for their trash cans." Forooghieh argued Shick was harassing him by moving his (Shick's) trash cans to occupy Shick's street parking spot when he left home.

The court sustained Shick's relevance objection and asked for evidence Shick was intentionally harassing Forooghieh with his cars. Forooghieh said, "The trash bins are now empty, and lid has been placed in front of my property. So I have to go pick up the lid and put it back on." Forooghieh said he knew Shick placed the lid in front of Forooghieh's property because he (Forooghieh) had been sending him cease and desist letters telling him "to stop playing games with trash cans." The court pointed out that trash collectors pick up the cans, and lids fall off frequently. Forooghieh insisted, "They keep bringing it to the edge of my property and make sure the lid falls off."

Forooghieh wanted to question Shick about a passage in Shick's declaration in which Shick described the April 28, 2022 incident and referred to attached exhibits, with the statement, "*video will be played at trial*." Forooghieh asked where the video

7

was that showed he threatened to shoot and kill Shick. Shick's counsel advised the court they had played for the court the video that was taken that day.

IV.    Shick's Son's Declaration

Shick's counsel asked the court if it wanted Shick's son, who had submitted a declaration in support of the request for a restraining order, to testify. The court reviewed the declaration and asked Forooghieh if he wanted to question Shick's son. Forooghieh declined, stating he could prove the declaration wrong. Forooghieh told the court he could not have begun harassing the Shick family in "early 2020" as the declaration claimed, because his lease agreement for a Texas residence proved he did not return to Los Angeles from Texas until April 2020. The court said, "I don't know if that's going to help you, because 'early 2020' could have been January, February, or March."

V.    Court's Ruling

First addressing Forooghieh's petition, the court discussed the evidence concerning Shick's conduct and found it sufficient to support a restraining order against him. Next, the court turned to Shick's petition. Forooghieh's anger at what he believed to be Shick's attempts "to claim as his own several feet of asphalt," the court said moving cars around is a common practice in neighborhoods where there are multiple cars per household. People "jockey their cars around. . . . They sometimes have to move their cars in and around the gardeners' schedules and in and around the trash can schedules. It just happens. It's not clear to me at all that he was doing anything other than utilizing a public street, but I did observe you pushing his trash cans, and

8

although, as you argue, they're city property, they're leased to the individuals to whom they're assigned." The court said Forooghieh's "manhandling of those trash cans, pushing them up and down the street, pushing them closer to his property because you felt that they were interfering with a couple feet of asphalt that came between this friendship is harassing. And, certainly, it's an inconvenience to this family" to have to retrieve trash cans Forooghieh pushed across the street. Finally, the court stated, "Frankly, based on your anger and what appears to be your absolute obsession with this couple of feet of asphalt, I find credible also Mr. Shick's claim that at one point in time you threatened to put him in the hospital."

The court issued mutual two-year restraining orders, with the restraining order against Forooghieh also protecting Shick's wife and children. Forooghieh appeals.

## DISCUSSION

I.  Applicable Law

Section 527.6, subdivision (a)(1) provides that a person who has been subjected to harassment may seek a temporary restraining order and an order prohibiting harassment after hearing. Harassment is defined in the statute as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." (§ 527.6, subd. (b)(3).)

A credible threat of violence is "a knowing and willful statement or course of conduct that would place a reasonable person in fear for the person's safety or the safety of the person's immediate family, and that serves no legitimate purpose."

9

(§ 527.6, subd. (b)(2).)  The statute defines a course of conduct as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or email."  (§ 527.6, subd. (b)(1).)

On review of a civil harassment restraining order, we determine whether the factual findings, express and implied, are supported by substantial evidence; the determination whether the facts, construed in the petitioner's favor, are legally sufficient to constitute civil harassment is reviewed de novo.  (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 497.)

"Evidence of even one credible witness 'is sufficient for proof of any fact.'"  (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 334; see Evid. Code, § 411.)  On appeal, it is not our role to reweigh the evidence, resolve conflicting evidence, or to redetermine the credibility of witnesses. (*Williamson v. Brooks* (2017) 7 Cal.App.5th 1294, 1300 (*Williamson*).)  Instead, "[w]e look at the evidence in support of the successful party, disregarding any contrary showing, and we resolve all conflicts in favor of the respondent, indulging in all legitimate and reasonable inferences to uphold the verdict if possible.  [Citation.]  When two or more inferences can reasonably be deduced from the facts, we do not substitute our deductions for those of the finder of fact.  [Citation.]  We must affirm if substantial evidence supports the trier of fact's determination, even if other substantial evidence would have

10

supported a different result." (*Canister v. Emergency Ambulance Service, Inc.* (2008) 160 Cal.App.4th 388, 394.)

## II. Appellant's Arguments

It is difficult to distinguish and understand Forooghieh's arguments on appeal for several reasons. First, he fails to comply with California Rules of Court, rule 8.204(a)(1)(B)'s requirement that each point be stated under a separate heading or subheading summarizing the point. Second, his brief is filled with " 'general assertion[s], unsupported by specific argument.' " (*Jewish Community Centers Development Corp. v. County of Los Angeles* (2016) 243 Cal.App.4th 700, 716.) Rather than "cognizable legal argument in support of reversal of the judgment," (*Needelman v. DeWolf Realty Co., Inc.* (2015) 239 Cal.App.4th 750, 762), most of Forooghieh's arguments are brief blanket statements about what the evidence showed or what the trial court allegedly believed, followed by an unexplained reference or references to the reporter's transcript. We are left with the task of attempting to determine whether and how each citation supports his assertions. However, "[o]ne cannot simply say the court erred, and leave it up to the appellate court to figure out why" or how. (*Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368.) "It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 (*Benach*).)

### A. Sufficiency of the Evidence

Forooghieh argues the court erred in concluding both men had met their burdens to support their petitions for restraining orders in light of the court's statement early in the proceedings that neither's testimony alone would be sufficient. He claims

11

Shick did not provide substantial evidence to support his accusations, and the evidence proved Shick's allegations "were contrived, and rejected by the court." These statements are followed by a list of record citations and no discussion. This argument is inadequate to present any issue for our review. "An appellant must provide an argument and legal authority to support his contentions. This burden requires more than a mere assertion that the judgment is wrong." (*Benach, supra,* 149 Cal.App.4th at p. 852.)

Additionally, Forooghieh has forfeited any challenge to the sufficiency of the evidence by failing to accurately discuss the record. A party who challenges the sufficiency of the evidence to support a particular finding must summarize the evidence on that point, favorable and unfavorable, and show how and why it is insufficient. (*In re Marriage of Marshall* (2018) 23 Cal.App.5th 477, 487.) An appellant " 'who cites and discusses only evidence in [their] favor fails to demonstrate any error and waives the contention that the evidence is insufficient to support the judgment.' " (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620.)

Despite the forfeiture of this issue, we have reviewed the record on appeal and conclude the evidence is sufficient to support the issuance of a restraining order against Forooghieh. Shick testified Forooghieh threatened to shoot and kill him, and Shick's son testified by declaration that Forooghieh told Shick, "[I]f you place your trash cans by my drive way I will shoot and kill you!" Shick also testified to Forooghieh's ongoing campaign of harassment over trash can placement and parking. Forooghieh admitted moving Shick's trash cans. We understand Forooghieh disputes Shick's claims, but the court resolved the conflicts in the evidence by concluding Forooghieh had

12

threatened and harassed Shick, and we may not reweigh the evidence on appeal.  (*Williamson*, *supra*, 7 Cal.App.5th at p. 1300.)[5]

B.    Factual Error

Forooghieh argues the court mistakenly believed he threatened to put Shick in the hospital, when in fact this was the threat Shick made to him.  While it is clear from the court's remarks that the court understood each man's conduct, in the course of delivering its rulings, the court mixed up the actual language of the two threats and erroneously attributed the less serious threat to Forooghieh: The court said Forooghieh threatened to put Shick in the hospital, when the evidence was that he threatened to shoot and kill Shick.

Forooghieh claims that "absent the court's mistaken belief that appellant threatened to put Shick in the hospital, there was no evidence that appellant ever made a credible threat of violence

---

[5]    Forooghieh's briefing is directed toward attacking the evidence against him and challenging its sufficiency to support the issuance of the restraining order, and he does not appear to argue that the facts, when construed in Shick's favor, were legally insufficient to constitute civil harassment.  Such an argument, if made, would be meritless.  Were we to independently review the court's determination that the facts were sufficient to constitute harassment, we would conclude they were.  Forooghieh made a credible threat of violence against Shick, a knowing and willful statement that served no legitimate purpose and would place a reasonable person in fear for the person's safety or the person's immediate family.  (§ 527.6, subd. (b)(2).)  A credible threat of violence that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose, is civil harassment.  (§ 527.6, subd. (b)(3).)

against him, or harassed him within the meaning of . . . section 527.6." (Boldface and underscoring omitted.) As discussed above, substantial evidence supported the court's conclusion that Forooghieh engaged in harassment and threatened Shick with violence. Given the substantial evidence supporting the court's findings and the court's demonstrated understanding of the contentions and evidence, the court's misstatement of the precise wording of Forooghieh's threat of physical violence was neither indicative of any larger misattribution of Shick's conduct to Forooghieh nor prejudicial in any way.

### C. Dismissal of the Petition

Forooghieh asserts the court abused its discretion by not dismissing Shick's petition "upon verifying respondent's accusations were all false." (Underscoring omitted.) He argues Shick's "evidence and testimony refuted his claims" of vandalism, death threats, threats to the gardeners, spying on Shick's wife, interfering with Shick's trash pickup, and shouting obscenities in early 2020. Forooghieh provides no argument or authority supporting his contention that Shick's testimony and evidence proved Forooghieh's claims false. Instead, Forooghieh lists for each topic one or more citations to the reporter's transcript and a fragmentary quotation of something said during the hearing. This is insufficient. Appellants are required to explain the relevance of facts cited in their briefs (*Okorie v. Los Angeles Unified School Dist.* (2017) 14 Cal.App.5th 574, 600, disapproved on other grounds by *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1012, fn. 2) and to present "meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for the

14

proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' " (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

Additionally, most of the passages Forooghieh lists do not conclusively refute Shick's allegations.  For instance, Shick described the April 28, 2022, confrontation in a declaration, and at the end of the description, he identified several sources of evidentiary support, including a video recording.  The video was played at the restraining order hearing, and both men testified Shick had begun recording after the confrontation was already underway.  Focusing on the declaration's phrase, "*video will be played at trial*," Forooghieh attempted to cross-examine Shick about which video showed him doing all Shick had described in that paragraph of the declaration.  Forooghieh argued in the trial court (and presumably contends on appeal as well, although he does not set forth an argument), that the video did not depict the alleged threat and "there is no proof or evidence that I ever said to anybody that I'm going to shoot and kill them."  However, as previously discussed, there was evidence that Forooghieh threatened to shoot and kill Shick, and the court credited that evidence.  The absence of video proof of each detail listed in that paragraph of Shick's declaration does not, as a matter of logic, conclusively demonstrate his account was false.

Similarly, the court's question to Shick, "Sir, you put your trash bin out on Tuesday for pickup on Thursday?" is not evidence, and it does not refute Shick's allegation that Forooghieh interfered with his trash cans.  In the same vein, Forooghieh's lease on a residence in Texas until April 2020 does not disprove the allegation that early in 2020 he yelled obscenities at the Shicks.  The end date of a lease does not

15

establish a person's location at all times, and even if Forooghieh was not at his home until April 2020, that does not establish the allegation was false, as "early 2020" is a broad term, and we cannot say as a matter of law that April cannot be considered early in a year.

It is true that the court found the letter from the gardeners, though admissible, lacked credibility; the court declined to make findings on the issue of Forooghieh watching Shick's wife because there was no evidence how long he had been watching her; and it expressed some doubt as to whether Forooghieh broke the trash can lid, but this did not warrant the dismissal of the entire petition where the court credited the evidence of other harassing and threatening conduct by Forooghieh. Forooghieh has not established error here.

### D. Criminal Liability

Forooghieh asserts that the court should have held Shick and his family "responsible" for a list of actions: signing false declarations, making false police reports, giving false testimony, fabricating evidence, and filing a fraudulent petition for a temporary restraining order. After each listed item, Forooghieh provides a string of record citations without explanation or argument; he then quotes three Penal Code sections without discussion. This is insufficient to present an issue for our review. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408.)

Moreover, the court's findings indicate the court did not believe the declarations and testimony were false, the Shicks made false police reports, or the petition for a temporary restraining order was fraudulent. Although the court found the letter from the landscaping company lacked credibility and accorded it little weight, the court ruled it admissible and did not

16

find it was fabricated. We may not reweigh the evidence and substitute our judgment for that of the trial court. (*Williamson, supra,* 7 Cal.App.5th at p. 1300.)

E. Protection of Family Members

Section 527.6, subdivision (c) provides, "In the discretion of the court, on a showing of good cause, a temporary restraining order or order after hearing issued under this section may include other named family or household members." Forooghieh asserts it was error to include Shick's wife and sons as parties protected by the restraining order because "[n]o evidence was presented to prove any concern for safety of respondent or his family members. All declarations associated with respondent's accusations in his petition were found to be deficient including the declarations of his son and wife."

Forooghieh's claim there was no evidence of a safety concern is belied by the evidence he made a credible threat of violence against Shick and fails to demonstrate an absence of good cause to include the other family members in the restraining order. As for the contention that the declarations supporting Shick's petition "were found to be deficient," we did not locate, nor did Forooghieh direct us to, any such finding in the record. Forooghieh lists a string of record citations rather than a legal argument, and the citations direct this court to the same passages of the record that he has already brought to our attention: his criticism of Shick's declaration because no video depicted each action alleged in the declaration about the April 28, 2022 incident; the factual dispute over whether Forooghieh broke the trash can lid, in which the court indicated Shick's accusation that Forooghieh broke it may have been mistaken; the court's conclusion there was insufficient evidence to make findings

17

regarding the allegation of Forooghieh watching Shick's wife; and Forooghieh's belief that his Texas lease refuted the claim that he yelled obscenities at the Shicks in early 2020. None of these passages establishes error in including Shick's family in the restraining order.

### F. Alleged Court Negligence

In a one-sentence argument followed by another list of record citations, Forooghieh states the trial court was negligent in granting protective orders "to individuals who participated in making false claims of criminal conduct" based on a mistaken "belief a restraining order for violence will mitigate years-long behaviors that eventually led to [Shick's] violation of the TRO against him." The court did not find Shick and his family had made false claims of criminal conduct; rather, the court concluded, after hearing evidence, that Forooghieh had harassed Shick and made a credible threat of violence against him. Forooghieh disagrees with the court's conclusions, but as discussed above, they are supported by substantial evidence.

Our review of the record does not support Forooghieh's assertion that the court issued the restraining order against Forooghieh with the intent of "mitigating" or otherwise impacting Shick's behavior. To the contrary, the court issued the restraining order against Forooghieh to protect Shick from future harassment by Forooghieh.

### G. Basis for Restraining Order

Forooghieh argues the court abused its discretion by granting a restraining order against him for "moving respondent's trash bins away from his driveway." (Underscoring omitted.) This is not an accurate description of the court's factual

18

findings. The court concluded that (1) Forooghieh was not merely moving trash cans away from his driveway but manhandling them and moving them up and down the street, creating a nuisance and inconvenience for the family that rose to the level of harassment; and (2) Forooghieh had threatened Shick with violence. (§ 527.6, subd. (b)(3) [harassment includes "a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose"].)

## H. Misattribution of Conduct

Forooghieh alleges the court "mistakenly attributed" to him the "systematic harassment" Shick was committing. He argues Shick's restraining order request was based on alleged threats and vandalism, not harassment by Forooghieh's movement of his trash cans; and Shick did not claim the movement of his trash cans posed a nuisance. Setting forth his view of the evidence— that Shick harassed him with his trash cans and attempts to reserve parking on the street—Forooghieh claims Shick was the person engaging in harassment, and he concludes the court must have erroneously attributed Shick's harassing conduct to him.

Contrary to his assertion, Forooghieh's conduct with Shick's trash cans, including moving them and allegedly breaking a trash can lid, was very much at issue and discussed at length in the restraining order proceedings. Shick may not have used the word "nuisance," but his allegations of harassment encompassed Forooghieh's behavior with the trash cans. Shick described Forooghieh's treatment of the trash cans in his declaration supporting his request for a restraining order, and his son's declaration recounted Forooghieh's movement of the Shicks' trash cans while screaming at Shick and threatening violence. At the

19

hearing, Shick testified Forooghieh blocked his car with one trash bin and moved others during the April 28, 2022 altercation; and Shick's video, also played at the hearing, depicted Forooghieh moving a trash can.

We have reviewed the transcript of the hearing and find no evidence the court mistakenly attributed any of Shick's actions to Forooghieh beyond its minor misstatement of the actual words of Forooghieh's threat of violence, which we have already discussed. Both Shick and Forooghieh discussed at length how Shick's trash cans had been handled, and the court noted it saw Forooghieh pushing Shick's trash can in the video played at the hearing. It is clear from the court's remarks, both during the hearing and when delivering its ruling, that the court was correctly attributing Forooghieh's conduct to Forooghieh.

I.      "Early 2020"

Forooghieh alleges the court "erred in mistakenly believing that an individual living in Texas from 2019 until April 2020 can be in Los Ang[e]les, in '*January, February, and March*' of 2020," and states he did not live in California at the time Shick's son declared he was harassing the family. (Underscoring omitted.) This refers to a point discussed above, Forooghieh's belief that his Texas lease agreement proved he did not return to Los Angeles until April 2020, and therefore he could not have harassed the Shicks in early 2020 as stated in the declaration of Shick's son.

The court's statement that the lease was not as helpful to Forooghieh as he believed it was because " 'early 2020' could have been January, February, or March," indicates only that it questioned whether the lease was as definitive as Forooghieh believed. The court never made a finding about when the harassment began or where Forooghieh was prior to April 2020,

20

nor was any such finding necessary. We note again that "early" is a general term that does not rule out an April date, and an out-of-state lease does not prove one was never at one's California home during the lease term. More importantly, even if the court possessed the belief Forooghieh ascribes to it, he does not explain how this demonstrates error in granting the restraining order. The date the harassment began is not determinative; even if Forooghieh could not have harassed the family prior to April 2020, this only conclusively demonstrates a date in a declaration was incorrect. It does not show that the declaration was false in its entirety, the harassment did not occur, or there was insufficient evidence to support the issuance of the restraining order.

### J. Record Preservation and Failure to Consolidate

Forooghieh states the court erred "in not preserving the record, [and] by failing to consolidate both petitions heard on July 18,[ ]2022 trial." (Underscoring omitted.) He asserts his petition for a restraining order was continued to July 18, 2022, resulting in both petitions for a restraining order being heard on that date. Next, he describes his difficulties in securing the record for appellate review, contending the trial court only preserved documents relating to Shick's petition; he (Forooghieh) paid fees a second time to complete the record; and the appeal was delayed almost nine months because the trial court did not preserve the documents in both cases.

Whatever the accuracy and merits of these contentions, Forooghieh does not argue they demonstrate any error in the court's ruling granting Shick's petition for a restraining order, much less that had the court consolidated the matters or preserved documents after the hearings the outcome of Shick's

21

restraining order petition would have been different. This is fatal to his claim. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 ["it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment"]; Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.)

K.    Effect on Shick of Restraining Order Against Forooghieh

Forooghieh asserts the court erroneously believed issuing a restraining order against him would prevent Shick from "intimidating behavior," but we do not see that in the record. The court issued mutual restraining orders: one against Forooghieh to protect Shick from future harassment by Forooghieh, and the other against Shick to protect Forooghieh from future harassment by Shick. As Forooghieh notes, the court acknowledged Shick's provocative behavior, but nothing in the court's comments suggests it granted the restraining order against Forooghieh because of, or with the intent of changing, Shick's behavior.

Forooghieh next states, without elaboration or citation to the record, that the court recognized Shick's evidence lacked credibility and all Shick's allegations were refuted by his own evidence. These categorical statements, devoid of analysis and unsupported by reference to facts in the record, fail to present any issue for our review or to support Forooghieh's argument about the court's intent in granting the restraining order against him. We are not obligated to make arguments for litigants, and we disregard conclusory arguments failing to disclose the

reasoning by which litigants reached the conclusions they ask us to adopt.  (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)

## DISPOSITION

The order is affirmed.  Respondent shall recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

WILEY, J.

VIRAMONTES, J.